UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

YVETTE RIVERA,

                    Plaintiff,

-against-

MCI, INTERNATIONAL, INC., a/k/a
MCI, INC.,

                    Defendant.

Case No.:

**COMPLAINT**

Plaintiff demands a jury trial

**'05 CIV 10670**

**JUDGE McMahon**

---

Plaintiff, YVETTE RIVERA, complaining of the Defendant, by her attorneys, **BESEN AND TROP, L.L.P.**, respectfully alleges as follows:

### INTRODUCTORY STATEMENT

1. This is an action for sex (pregnancy) discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000e, *et seq.* ("Title VII"), and the New York Human Rights Law, N.Y. Exec. Law §290 *et seq.* ("NYSHRL").

### JURISDICTION AND VENUE

2. The jurisdiction of this Court is predicated upon 28 U.S.C.A. §1331, 42 U.S.C. §2000e-5(f), and further upon diversity of citizenship of the parties pursuant to 28 U.S.C.A. §1332.

3. Venue in this judicial district is proper pursuant to 28 U.S.C.A.. § 1391.

4. Plaintiff has filed charges of sex (pregnancy) discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC").

1

5.  This action is filed within ninety (90) days of Plaintiff's receipt of her Notice of Right to Sue from the EEOC, with respect to her sex/pregnancy discrimination and retaliation charges.

6.  Plaintiff has fully complied with all of the statutory prerequisites to the filing of this action.

## PARTIES

7.  That at all times hereinafter mentioned, the Plaintiff, YVETTE RIVERA, was and still is a resident of the State of New York, County of Nassau.

8.  Upon information and belief, Defendant is a corporation licensed to do business in the State of New York.

9.  Plaintiff was employed by Defendant, MCI, INC., as an Executive Administrative Assistant from August 15, 2003, until December 9, 2004, at defendant's Westchester/New York office located at 2 International Drive, Rye Brook, New York 10573.

10. At all times relevant to this action, Defendant has been engaged in an industry affecting commerce, has employed twenty (20) or more employees, and has been an employer within the meaning of Title VII and NYSHRL.

## FACTUAL ALLEGATIONS

11. Plaintiff is a female who was employed by Defendant as an Executive Administrative Assistant in its Westchester/New York office from August 15, 2003 through December 9, 2004.

12. During the course of her employment, Plaintiff performed her duties as an Executive Administrative Assistant in a satisfactory manner.

13. At all times relevant to this action, Daniel Blair Crump (hereinafter "Crump"), was and still is employed as a Senior Vice President of Sales, by the Defendant, MCI, INC.

13. At all times relevant to this action, Crump was Plaintiff's supervisor, and Plaintiff's job was to support Crump in an Executive Administrative Assistant capacity. Plaintiff's duties included screening incoming calls, scheduling appointments, coordinating travel arrangements, and approving expense reports, purchasing requests and employee time sheets.

14. In January of 2004 the Plaintiff became pregnant.

15. In or about February or March of 2004, the Plaintiff informed her supervisor, Crump, that she was pregnant.

16. Upon informing her supervisor of same, Crump asked the Plaintiff whether or not she was married. Plaintiff found this question offensive and personal, yet Plaintiff informed him that she was single.

17. After inquiring into the Plaintiff's marital status, Crump stated that he had respect for women who choose to be stay-at-home moms and further told the Plaintiff that should she decide not to return to work, the Plaintiff should give him sufficient notice.

18. The Plaintiff informed Crump that she fully intended to return to work after her maternity leave and the two agreed at that time that she would attend any prenatal appointments during her lunch hour, and that Plaintiff would work until her due date, barring any unforeseen medical issues.

20. Soon after informing Crump of her pregnancy, Plaintiff's supervisor's attitude and behavior

3

towards her changed.

21. Prior to informing her supervisor of her pregnancy, Plaintiff would frequently communicate with Crump via her cell phone during lunch breaks or after business hours regarding business issues. After telling Crump of her pregnancy he ceased all cell phone contact with Plaintiff whenever she was out of the office, and instead complained that he could not reach her when she was out of the office.

22. After being informed of her pregnancy and status as an unmarried women, Crump frequently criticized Plaintiff to his Chief of Staff, Denise Austin (hereinafter "Austin").

23. Despite the fact that Plaintiff always relayed her whereabouts to the individual who would provide phone coverage for Crump when she was out of the office, Crump would always complain that he couldn't reach the Plaintiff and did not know where she was.

24. Crump frequently told the Plaintiff that she seemed distracted, and he complained that she didn't complete her assignments. However, when Plaintiff asked for specific incidences or examples of assignments that Crump alleged she did not complete, Crump stated that he could not recall the specifics.

25. Crump traveled on business trips frequently and it was the Plaintiff's job to make all travel arrangements. On one occasion Crump encountered a flight delay during one of the Plaintiff's lunch breaks and upon her return to the office, Crump called the Plaintiff and told her that she was not allowed to leave for her lunch break until he was on a plane, regardless of its departure time.

26. Plaintiff immediately reported the foregoing incident to Phyllis Norman in Defendant's Human Resources Department (hereinafter "HR"), and further informed the Defendant, its agents, servants,

and/or employees, that she was humiliated, intimidated and insulted by the continuous harassment and disparate treatment she suffered at the hands of her supervisor, and told them she felt as if she was being encourage to resign her position.

27. Upon information and belief, Defendant failed to take any action in response to the Plaintiff's complaints.

28. Upon information and belief, Crump was informed and had knowledge of the Plaintiff's complaints to the HR Department.

29. After Plaintiff's first formal complaint to Defendant's HR Department about the conduct of her supervisor, the discriminatory and unlawful treatment continued and worsened.

30. At the end of August, 2004, the Plaintiff gave birth and went on leave of absence.

31. Prior to going on maternity leave, the Plaintiff provided her supervisor and all relevant personnel with an update on all pending matters.

32. A few days into the Plaintiff's maternity leave, Crump e-mailed her, asking whether she renewed one of his online subscriptions, even though Plaintiff had completed that assignment prior to her leave and had informed Crump of same.

33. Prior to Plaintiff's return from maternity leave, she made several attempts to contact Crump via phone and e-mail; however, all attempts were unanswered.

34. Upon Plaintiff's return to work from maternity leave, she was informed that she would now report to Austin, however, she would continue to support Crump in an Executive Administrative Assistant

capacity and retain her prior duties.

35. Upon Plaintiff's return to work, she was informed that she would frequently have to forgo lunch breaks, and instead eat at her desk, and was told that she would have to work longer hours, even though there were no specific assignments or emergencies that needed to be addressed after-hours.

36. Upon return to work and in the regular course of business, Plaintiff was now required to call and confirm airline schedules for Crump outside of business hours, to check for delays or other problems the days he was traveling, and was sometimes require to perform these duties at 6:00 or 7:00 A.M., prior to office hours and regardless of her personal schedule.

37. After returning to work, Plaintiff attempted to make arrangements to express breast milk, and was asked by Austin if it was necessary to do same during business hours, being told by Austin that same was inappropriate to do in the office.

38. When Plaintiff asked for a company Blackberry ( PDA) to enhance communications between her supervisor and herself beyond business hours, Crump told her that he did not have the funds in his budget to accommodate the request; yet just a few days later, he approved the purchase of the same PDA for another employee reporting to him and even asked the Plaintiff to place the order for the device. Additionally, other individuals at the same level as the Plaintiff within the company had Blackberry's or PDAs.

39. Upon information and belief, in addition to Crump's denial of the PDA, Austin had commented about supplying the device to the Plaintiff, saying that it should not be provided to the Plaintiff

because Austin did not want to take a chance of having her answer Crump's calls with two small children in the car.

40. Just prior to Plaintiff's discharge, a company-wide, mandatory training on harassment in the work place was to be attended by every employee. Plaintiff reminded her supervisor of this and was told by Crump that he could not be bothered with taking that training.

41. The continuous disparate treatment and harassment by Crump coupled with the disparate treatment and behavior of Austin added to and facilitated the hostile work environment created by Crump, leading Plaintiff to again complain to Defendant's HR Department. At that time, HR told the Plaintiff not to give her supervisor an excuse to terminate her, and was essentially and implicitly encouraged to stop making complaints, and as such the HR Department, through Phyllis Norman, also contributed to and further facilitated and enhanced the hostile work environment and discrimination at Crump's request or due to the desire not to confront Crump about his illegal conduct.

42. Again, the Defendant did not take any action to prevent, prohibit or terminate the unlawful, discriminatory treatment the Plaintiff was suffering at the hands of Crump and Austin, and the HR Department.

43. Upon information and belief, Austin was aware of Plaintiff's complaints to the human resources department.

44. On December 8, 2004, the Plaintiff was working remotely from her home as she had done on other occasions, and had her office calls forwarded to her home. When Crump called in that day, Plaintiff

7

retrieved the telephone receiver and her daughter also picked up another phone in the house at the same time. Crump questioned the Plaintiff about it and Plaintiff responded that it was unintentional and would never happen again. Crump then proceeded to talk about business issues.

45. On December 9, 2004, Plaintiff reported to work and was terminated by the HR Department. She was told that she had violated the company's phone coverage policy, although the company as a whole did not have a phone coverage policy. However, her particular supervisor had set forth a policy that required all of his staff to arrange for back up phone coverage if they were unable to cover their phone, so that no calls went into voice mail even though voice mail was part of the company's resources and used by others at Crump's level. This policy was not violated by the Plaintiff on December 8, 2004, for the Plaintiff had arranged to cover her phone remotely from home, and further, actually spoke to Crump on that day when he called. No calls went unanswered by the Plaintiff; nor did the Plaintiff allow any calls to go into voice mail.

46. Upon information and belief, Plaintiff was replaced by an older female employee who was not pregnant and who did not have small children.

## FEDERAL CAUSES OF ACTION
### I. FIRST CAUSE OF ACTION-SEX/PREGNANCY DISCRIMINATION

47. Plaintiff repeats, reiterates, and realleges each and every allegation as set forth in paragraphs numbered "1" through "46" with the same force and effect as if fully set forth herein.

48. By its conduct as alleged, Defendant intentionally discriminated against Plaintiff on the bases of her sex/pregnancy in violation of Title VII.

49. Defendant's conduct was malicious, intentional and committed with knowledge or reckless indifference that the conduct was in violation of Title VII.

50. As a result of Defendant's discriminatory acts and practices, Plaintiff has suffered, is now suffering and will continue to suffer monetary damages in amounts to be determined at the trial of this action and other irreparable injuries, including humiliation, mental anguish, embarrassment, loss of self-esteem, pain and suffering and loss of enjoyment of life.

51. That the aforesaid occurrence and resulting injuries to the Plaintiff were caused wholly and solely by reason of the actions of the Defendant, its agents, servants and employees, and not by any actions of the Plaintiff.

## II. SECOND CAUSE OF ACTION—RETALIATION

52. Plaintiff repeats, reiterates, and realleges each and every allegation as set forth in paragraphs numbered "1" through "51" with the same force and effect as if fully set forth herein.

53. By its conduct as alleged, Defendant wrongfully, unlawfully, intentionally and illicitly terminated the Plaintiff's employment in retaliation for engaging in the protected activity of reporting discrimination and harassment, in violation of Title VII.

54. Defendant's conduct was malicious, intentional and committed with knowledge or reckless indifference that the conduct was in violation of Title VII.

55. As a result of Defendant's discriminatory acts and practices, Plaintiff has suffered, is now suffering and will continue to suffer monetary damages in amounts to be determined at the trial of this

action and other irreparable injuries, including humiliation, mental anguish, embarrassment, loss of self-esteem, pain and suffering and loss of enjoyment of life.

56. That the aforesaid occurrence and resulting injuries to the Plaintiff were caused wholly and solely by reason of the actions of the Defendant, its agents, servants and employees, and not by any actions of the Plaintiff.

### III. THIRD CAUSE OF ACTION - SEX/PREGNANCY DISCRIMINATION
### HOSTILE WORK ENVIRONMENT

57. Plaintiff repeats, reiterates, and realleges each and every allegation as set forth in paragraphs numbered "1" through "56" with the same force and effect as if fully set forth herein.

58. By its conduct as alleged, Defendant wrongfully, unlawfully, and intentionally permeated Plaintiff's workplace with discriminatory intimidation, ridicule and insult that was severe and pervasive.

59. Defendant's conduct interfered with and altered the conditions of Plaintiff's employment, in violation of Title VII.

60. Defendant's conduct was malicious, intentional and committed with knowledge or reckless indifference that the conduct was in violation of Title VII.

61. As a result of Defendant's discriminatory acts and practices, Plaintiff has suffered, is now suffering and will continue to suffer monetary damages in amounts to be determined at the trial of this action and other irreparable injuries, including humiliation, mental anguish, embarrassment, loss of self-esteem, pain and suffering and loss of enjoyment of life.

62.   That the aforesaid occurrence and resulting injuries to the Plaintiff were caused wholly and solely by reason of the actions of the Defendant, its agents, servants and employees, and not by any actions of the Plaintiff.

## PENDANT CLAIMS

### IV. FOURTH CAUSE OF ACTION - SEX/PREGNANCY DISCRIMINATION

63.   Plaintiff repeats, reiterates, and realleges each and every allegation as set forth in paragraphs numbered "1" through "62" with the same force and effect as if fully set forth herein.

64.   By its conduct as alleged, Defendant intentionally discriminated against Plaintiff on the bases of her sex/pregnancy in violation of NYSHRL.

65.   Defendant's conduct was malicious, intentional and committed with knowledge or reckless indifference that the conduct was in violation of NYSHRL.

66.   As a result of Defendant's discriminatory acts and practices, Plaintiff has suffered, is now suffering and will continue to suffer monetary damages in amounts to be determined at the trial of this action and other irreparable injuries, including humiliation, mental anguish, embarrassment, loss of self-esteem, pain and suffering and loss of enjoyment of life.

67.   That the aforesaid occurrence and resulting injuries to the Plaintiff were caused wholly and solely by reason of the actions of the Defendant, its agents, servants and employees, and not by any actions of the Plaintiff.

## V. FIFTH CAUSE OF ACTION - RETALIATION

68. Plaintiff repeats, reiterates, and realleges each and every allegation as set forth in paragraphs numbered "1" through "67" with the same force and effect as if fully set forth herein.

69. By its conduct as alleged, Defendant wrongfully, unlawfully, intentionally and illicitly terminated the Plaintiff's employment in retaliation for engaging in the protected activity of reporting discrimination and harassment, in violation of NYSHRL.

70. Defendant's conduct was malicious, intentional and committed with knowledge or reckless indifference that the conduct was in violation of NYSHRL.

71. As a result of Defendant's discriminatory acts and practices, Plaintiff has suffered, is now suffering and will continue to suffer monetary damages in amounts to be determined at the trial of this action and other irreparable injuries, including humiliation, mental anguish, embarrassment, loss of self-esteem, pain and suffering and loss of enjoyment of life.

72. That the aforesaid occurrence and resulting injuries to the Plaintiff were caused wholly and solely by reason of the actions of the Defendant, its agents, servants and employees, and not by any actions of the Plaintiff.

## VI. SIXTH CAUSE OF ACTION - SEX/PREGNANCY DISCRIMINATION
## HOSTILE WORK ENVIRONMENT

73. Plaintiff repeats, reiterates, and realleges each and every allegation as set forth in paragraphs numbered "1" through "68" with the same force and effect as if fully set forth herein.

and other nonpecuniary losses;

      (d)    awarding Plaintiff punitive damages in an amount to be determined at trial;

      (e)    awarding Plaintiff costs, disbursements and reasonable attorney's fees; and,

      (f)    Such other and further relief as this Court may deem just and proper under the circumstances.

PLAINTIFF DEMANDS A JURY TRIAL.

Dated:    Garden City, New York
            December 20, 2005

            Yours, etc.,

            **BESEN AND TROP, L.L.P.**
            *Attorneys for Plaintiff*

By: _____
            ROBERT E. TROP, Esq. (RT0172)
            Office and P.O. Address
            585 Stewart Avenue
            Suite 416
            Garden City, New York 11530
            (516) 745-1800